UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

ERIC JESSE WRIGHT and            )
ALINE WRIGHT,                    )
                                 )
        *Plaintiffs*,            )
                                 )        1:10-CV-291
        v.                       )
                                 )        Chief Judge Curtis L. Collier
CITY OF CHATTANOOGA, and         )
JAMES DAVES, individually and in his   )
capacity as an officer with the City of  )
Chattanooga Police Department    )
                                 )
        *Defendants*.            )

## MEMORANDUM

Before the Court are motions for summary judgment filed by Defendants City of Chattanooga and Officer James Daves in his official capacity (Court File No. 24) and Officer Daves in his individual capacity (Court File No. 28). Plaintiffs Eric Jesse Wright and Aline Wright (collectively, "Plaintiffs") filed a response in opposition to Defendants' motions for summary judgment (Court File No. 47). Defendants submitted reply briefs (Court File Nos. 50, 58). For the following reasons, the Court will **GRANT IN PART** the motions for summary judgment filed by Defendants City of Chattanooga and Officer James Daves in his official capacity (Court File No. 24) and Officer Daves in his individual capacity (Court File No. 28). The Court will **GRANT** summary judgment for all Defendants on Plaintiffs' § 1983 and ADA claims. The Court will **DISMISS WITHOUT PREJUDICE** all state law claims against Defendants.

## I.      RELEVANT FACTUAL AND PROCEDURAL BACKGROUND

### A. Factual Background

Plaintiff Aline Wright suffers from cardiomyopathy, a condition that Plaintiffs claim puts her at risk for strokes and blood clots (Court File No. 47-1 ("Eric Wright Aff."), ¶ 10; Court File No. 47-2 ("Aline Wright Aff."), ¶ 9). She also is an amputee and has suffered the loss of her left leg. On June 16, 2010, around 11:30 p.m., Mrs. Wright began experiencing stroke-like symptoms at her residence. Her husband, Plaintiff Eric Jesse Wright, is a certified emergency medical technician (Eric Wright Aff. ¶¶ 3-7). Mr. Wright began administering medical care to his wife but determined she needed to receive emergency medical care at a hospital immediately (*id.* ¶ 6). He carried his wife to the car and began driving her to Erlanger Hospital's emergency room in the couple's green Subaru Forester (*id.* ¶ 12). Mr. Wright contacted the emergency room to inform the doctors of his wife's condition and their pending arrival (*id.* ¶ 13).

At approximately 11:50 p.m., Plaintiffs were traveling westbound on McCallie Avenue in Chattanooga toward Erlanger Hospital (*id.* ¶ 16; Court File No. 25 ("Daves Aff."), ¶ 6). Upon approaching the intersection of McCallie and Holtzclaw Avenue, Mr. Wright claims he "applied [his] brakes, slowed, flashed [his] headlights as well as [his] emergency/hazard lights, and honked [his] horn" (Eric Wright Aff. ¶ 16). After concluding the intersection was clear, Mr. Wright claims he proceeded through the intersection slowly. At least three other vehicles were at, near, or had just passed through the intersection (Court File No. 32-2 ("Eric Wright Dep."), at 87-88; *cf.* Court File No. 32-4 ("Traffic Report"), at 1). Officer James Daves with the Chattanooga Police Department ("CPD") observed Mr. Wright's vehicle run the red light and claims he had to "slam on [his] brakes"

to avoid hitting Mr. Wright's vehicle (Daves Aff. ¶ 8). Also, Officer Daves claims Mr. Wright narrowly missed hitting a vehicle traveling northbound on Holtzclaw Avenue (*id.* ¶¶ 6-7).

Officer Daves activated his blue lights and siren to conduct a traffic stop on Mr. Wright (*id.* ¶ 9). Officer Daves avers Mr. Wright was driving "at a high rate of speed and changing lanes erratically" (*id.* ¶ 10). Officer Daves also claims he observed Mr. Wright run through a second red light and, as Mr. Wright's vehicle approached the hospital, he observed pedestrians attempting to cross the street who had to run from the street to avoid being hit (*id.* ¶¶ 14-15). Mr. Wright admits to seeing Officer Daves pull behind him with his lights on and not stopping (Eric Wright Aff. ¶ 18; Eric Wright Dep. at 105-08). However, he disputes Officer Daves' characterization of his driving and claims he drove cautiously toward the hospital with his hazard lights on (Eric Wright Aff. ¶¶ 19-20).

Upon arriving at the Erlanger emergency room entrance, Mr. Wright got out of his car and went around to the passenger side to get his wife (Eric Wright Aff. ¶ 23; Daves Aff. ¶ 16). He claims he loudly stated "my wife has a medical emergency" to Officer Daves, who had just emerged from the police car (Eric Wright Aff. ¶¶ 24-25). Mr. Wright claims Officer Daves grabbed his left arm as he was lifting Mrs. Wright out of the car (*id.* ¶ 26). Officer Daves claims Mr. Wright then shoved him (Daves Aff. ¶ 18). Mr. Wright asserts that, after he finally lifted his wife out of the car, Officer Daves proceeded to physically block their entrance to the emergency room (Eric Wright Aff. ¶ 28; Aline Wright Aff. ¶ 20). He claims Officer Daves told him "you are going to jail" and was angry (Eric Wright Aff. ¶¶ 31-32; Aline Wright Aff. ¶¶ 23-24). Plaintiffs assert it was not until "after some moments" that they were able to enter the emergency room (Eric Wright Aff. ¶ 33; Aline Wright

Aff. ¶ 25). Mr. Wright claims Officer Daves then forced his way into the treatment area and "began interfering" with Mrs. Wright's treatment until he was asked to leave (Eric Wright Aff. ¶ 34).

After Mr. Wright assisted in stabilizing his wife, he claims he went back to the emergency room entrance to move his car and was approached by Officer Daves (Eric Wright Aff. ¶ 36). According to Mr. Wright, Officer Daves stated "[I'm going to] make you a felon!" and told him he would "make up something good" (Eric Wright Aff. ¶ 36). Officer Daves also allegedly used profanity (*id.* ¶ 37).

Officer Daves filed an affidavit of complaint seeking an arrest warrant for Mr. Wright on June 17, 2010 (Daves Aff. ¶¶ 35-36; Court File No. 32-8 ("Aff. of Complaint")). Finding probable cause, a magistrate judge issued an arrest warrant for Mr. Wright for disorderly conduct, reckless endangerment, felony evading arrest, assault, two red light violations, and expired registration (*id.*).

On June 18, 2010, at approximately 9:00 a.m., Mr. Wright was arrested and held at the Hamilton County Jail for approximately eight hours (Eric Wright Aff. ¶ 42). On June 22, 2010, the Hamilton County District Attorney dismissed all charges against Mr. Wright citing the defense of "necessity" (*id.* ¶ 43; Court File No. 47-6). The Internal Affairs Division of the Chattanooga Police Department investigated the incident and concluded Officer Daves did not directly violate any of the CPD's policies and procedures (Court File No. 24-8). On June 23, 2010, Plaintiffs met with the CPD's Interim Chief of Police Mark Rawlston and Officer Daves (Eric Wright Aff. ¶ 45). Chief Rawlston issued an apology on behalf of the CPD but informed Plaintiffs Officer Daves had not violated any of the CPD's policies or procedures (*id.* ¶ 45).

At the time of the incident, the Chattanooga Police Department had in place policies and procedures for officer conduct, including policies on use of force and proper arrest procedures (Court File Nos. 29-1, 47-8 ("ADM-5"); Court File Nos. 29-2, 47-11 ("OPS-42")).

### B.    Procedural Background

On October 25, 2010, Plaintiffs filed a complaint against Defendants City of Chattanooga and Officer Daves, individually and in his official capacity (Court File No. 1-1 ("Complaint")). Plaintiffs allege the following violations against Defendants: (1) violation of Defendants' Fourth and Fourteenth Amendment rights pursuant to 42 U.S.C. § 1983; (2) violation of the Americans with Disabilities Act, 42 U.S.C. §§ 12101 *et seq.*; (3) violation of Article I, §§ 7, 8, and 13 of the Tennessee Constitution; (4) negligence; (5) negligence per se; (6) false arrest; (7) excessive force; (8) assault and battery; (9) outrageous conduct; (10) negligent infliction of emotional distress; (11) false imprisonment of both Mr. and Mrs. Wright; (12) false imprisonment of Mr. Wright; (13) malicious prosecution; (14) defamation; and (15) loss of consortium (Complaint ¶¶ 48-152). Plaintiffs seek compensatory and punitive damages, as well as attorney's fees (*id.* ¶¶ 157-160).

Defendants have moved for summary judgment on all claims (Court File Nos. 24, 28).


## II.    STANDARD OF REVIEW

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the burden of demonstrating no genuine issue of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Leary v. Daeschner*, 349 F.3d 888, 897 (6th Cir. 2003). The Court should view the evidence, including all reasonable inferences, in the light most favorable

to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Nat'l Satellite Sports, Inc. v. Eliadis, Inc.*, 253 F.3d 900, 907 (6th Cir. 2001).

To survive a motion for summary judgment, "the non-moving party must go beyond the pleadings and come forward with specific facts to demonstrate that there is a genuine issue for trial." *Chao v. Hall Holding Co.*, 285 F.3d 415, 424 (6th Cir. 2002). Indeed, a "[plaintiff] is not entitled to a trial on the basis of mere allegations." *Smith v. City of Chattanooga*, No. 1:08-CV-63, 2009 WL 3762961, at *2, *3 (E.D. Tenn. Nov. 4, 2009) (explaining the Court must determine whether "the record contains sufficient facts and admissible evidence from which a rational jury could reasonably find in favor of [the] plaintiff"). In addition, should the non-moving party fail to provide evidence to support an essential element of its case, the movant can meet its burden of demonstrating no genuine issue of material fact exists by pointing out such failure to the court. *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479 (6th Cir. 1989).

At summary judgment, the Court's role is limited to determining whether the case contains sufficient evidence from which a jury could reasonably find for the non-movant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248-49 (1986). If the Court concludes a fair-minded jury could not return a verdict in favor of the non-movant based on the record, the Court should enter summary judgment. *Id.* at 251-52; *Lansing Dairy, Inc. v. Espy*, 39 F.3d 1339, 1347 (6th Cir. 1994).

## III.     SECTION 1983

Plaintiffs' 42 U.S.C. § 1983 claim alleges Defendants violated Plaintiffs' Fourth and Fourteenth Amendment rights (Complaint at ¶¶ 48-64). To state a general claim under § 1983, a plaintiff must set forth "facts that, when construed favorably, establish (1) the deprivation of a right

secured by the Constitution or laws of the United States (2) caused by a person acting under the color of state law." *Sigley v. City of Parma Heights*, 437 F.3d 527, 533 (6th Cir. 2006) (citing *West v. Atkins*, 487 U.S. 42, 48 (1988)). When a party brings a suit against an officer in his official capacity, it is construed as a suit against the governmental entity. *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989). Suits against a municipality also involve a two-prong inquiry. *Cash v. Hamilton Cnty. Dep't of Adult Prob.*, 388 F.3d 539, 542 (6th Cir. 2004). The court must determine: (1) whether the plaintiff has been deprived of a constitutional right; and (2) whether the municipality is responsible for the violation. *Id.*

A municipality cannot be liable under a *respondeat superior* theory for § 1983 violations. *Id.* Rather, municipalities are liable when they "have caused a constitutional tort through 'a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers.'" *Id.* (quoting *City of St. Louis v. Praprotnik*, 485 U.S. 112, 121 (1988)). Additionally, even absent a policy "officially adopted" by a municipality's officers, a § 1983 plaintiff "may be able to prove the existence of a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law." *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978). A plaintiff bears the burden of showing "that the unconstitutional policy or custom existed, that the policy or custom was connected to the [municipality], and that the policy or custom caused [the] constitutional violation." *Napier v. Madison Cnty.*, 238 F.3d 739, 743 (6th Cir. 2001).

Failure to adequately train or supervise officers can rise to the level of a *de facto* unconstitutional policy or custom if a plaintiff can show: "(1) the training or supervision was inadequate to the tasks performed; (2) the inadequacy was the result of the municipality's deliberate

7

indifference; and (3) the inadequacy was closely related to or actually caused the injury." *Ellis v. Cleveland Mun. Sch. Dist.*, 455 F.3d 690, 700 (6th Cir. 2006). "[D]eliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Id.* (quoting *Board of Cnty. Comm'rs of Bryan Cnty. v. Brown*, 520 U.S. 397, 410 (1997)). "Only where a municipality's failure to train its employees in a relevant respect evidences a 'deliberate indifference' to the rights of its inhabitants can such a shortcoming be properly thought of as a city 'policy or custom' that is actionable under § 1983." *Loggins v. Franklin Cnty.*, 218 F. App'x 466, 473 (6th Cir. 2007) (quotation omitted).

The Court will address Plaintiffs' § 1983 claims against each Defendant in turn.

### A.    Claims Against Officer Daves in his Individual Capacity

Plaintiffs assert Officer Daves violated the Fourth and Fourteenth Amendments of the United States Constitution, particularly with respect to Plaintiffs' right to be free from (1) illegal seizure; (2) unlawful arrest; (3) illegal detention and imprisonment; and (4) physical abuse, coercion, and intimidation. Defendant, however, avers he is entitled to qualified immunity. Under the doctrine of qualified immunity, government officials are generally shielded from civil damages liability when performing discretionary functions "as long as their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Anderson v. Creighton*, 483 U.S. 635, 638 (1987). Even if a government official deprives a plaintiff of a federal right, "qualified immunity will apply if an objective reasonable officer would not have understood, by referencing clearly established law, that his conduct was unlawful." *Painter v. Robertson*, 185 F.3d 557, 567 (6th Cir. 1999). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986). The plaintiff bears the burden of showing a

8

defendant is not entitled to qualified immunity. *See Wegener v. Covington*, 933 F.2d 390, 392 (6th Cir. 1991).

Courts typically employ a two-part test to determine whether qualified immunity will apply. First, a court must consider whether, when viewed in the light most favorable to the plaintiff, "the facts alleged show the officer's conduct violated a constitutional right." *Saucier v. Katz*, 533 U.S. 194, 201 (2001) (citing *Siegert v. Gilley*, 500 U.S. 226, 232 (1991)). It must also consider "whether the violation involved a clearly established constitutional right of which a reasonable person would have known." *Peete v. Metro. Gov't of Nashville & Davidson Cnty.*, 486 F.3d 217, 219 (6th Cir. 2007) (citation omitted). This second inquiry looks closely at the particular context of the case rather than asking whether a right was clearly established "as a broad general proposition." *See Saucier*, 533 U.S. at 201. Since the failure of either prong is dispositive in favor of the defendant, the Court may address either prong of the test first. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

Because qualified immunity shields reasonable conduct, even when it is mistaken, the Sixth Circuit has at times added a third line of inquiry to the traditional two-part test: "whether the plaintiff has offered sufficient evidence to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional rights." *Peete*, 486 F.3d at 219; *cf. Everson v. Leis*, 556 F.3d 484, 494 n.4 (6th Cir. 2009) (stating regardless of whether the two-prong or the three-prong test is applied, "the essential factors considered are [] the same"). "[I]f officers of reasonable competence could disagree [on the legality of the action], immunity should be recognized." *Malley*, 475 U.S. at 341.

Here, Plaintiffs did not meet their burden of showing Defendant is not entitled to qualified immunity. Plaintiffs first assert Defendant violated their Fourth and Fourteenth Amendment rights

by engaging in an unlawful seizure and arrest, as well as an unlawful detention. An arrest made pursuant to a facially valid warrant "is normally a complete defense to a federal constitutional claim for false arrest or false imprisonment made pursuant to § 1983." *Voyticky v. Vill. of Timberlake*, 412 F.3d 669, 677 (6th Cir. 2005) (citing *Baker v. McCollan*, 443 U.S. 137, 143-44 (1979)). The Fourth Amendment requires that "no Warrants be issued, but upon probable cause." U.S. Const. amend. IV. "Probable cause exists if the facts and circumstances known to the officer warrant a prudent man in believing that the offense has been committed." *Logsdon v. Hains*, 492 F.3d 334, 341 (6th Cir. 2007) (quoting *Henry v. United States*, 361 U.S. 98, 102 (1959)). The officer's actual motives are irrelevant if the circumstances, viewed under an objective light, support a showing of probable cause. *Criss v. City of Kent*, 867 F.2d 259, 262 (6th Cir. 1988). Moreover, even officers who "reasonably but mistakenly conclude that probable cause is present" are entitled to immunity. *Hunter v. Bryant*, 502 U.S. 224, 227 (1991) (quoting *Anderson v. Creighton*, 483 U.S. 635, 641 (1987)). "Only where the warrant application is so lacking in indicia of probable cause as to render official belief in its existence unreasonable will the shield of immunity be lost." *Malley*, 475 U.S. at 344-45 (internal citation omitted).

Because there is no dispute that Officer Daves obtained a facially valid warrant from a magistrate judge, the key inquiry is whether his affidavit was, in fact, deeply lacking in any indicia of probable cause. Defendant sought a warrant against Mr. Wright for a number of violations, including reckless endangerment and evading arrest (Daves Aff. ¶¶ 35-36; Aff. of Complaint at 1). In determining whether an officer is authorized to make an arrest, state law generally governs. *Logsdon v. Hains*, 492 F.3d 334, 341 (6th Cir. 2007). Therefore, this Court will look to Tennessee law to examine the charges against Mr. Wright that served as the bases for Officer Daves' affidavit.

With regard to reckless endangerment, Tenn. Code Ann. § 39-13-103(a) states, "[a] person commits an offense who recklessly engages in conduct that places another person in imminent danger of death or serious bodily injury." Reckless endangerment in Tennessee is a Class A misdemeanor and reckless endangerment committed with a deadly weapon is considered a Class E Felony. Tenn. Code Ann. § 39-13-103(b). Under Tennessee law, an automobile may be considered a deadly weapon under some circumstances. *See State v. McGouey*, 229 S.W.3d 668, 674 (Tenn. 2007) (noting even an item that is not a deadly weapon per se can be deemed a deadly weapon "if the defendant in a particular case actually used or intended to use the item to cause death or serious bodily injury").

With regard to evading arrest, Tenn. Code Ann. § 39-16-603(b)(1) states, "[i]t is unlawful for any person, while operating a motor vehicle on any street, road, alley or highway in this state, to intentionally flee or attempt to elude any law enforcement officer, after having received any signal from the officer to bring the vehicle to a stop." Violation of this provision is, at a minimum, a Class E Felony, and can be a Class D felony if "the flight or attempt to elude creates a risk of death or injury to innocent bystanders or other third parties." Tenn. Code Ann. § 36-16-603(b)(3).

A rational factfinder could conclude Officer Daves provided sufficient facts in his affidavit upon which a judicial officer could determine probable cause existed. Among other things, Officer Daves submits in his affidavit Mr. Wright ran through at least two red lights in his car while trying to reach Erlanger Hospital (Aff. of Complaint at 1). Even viewing the evidence in the light most favorable to Plaintiffs, Plaintiffs admit Mr. Wright drove through a red light at the first intersection and that at least three other cars were at, near, or had just passed through at the time of the alleged offense. Officer Daves personally insists he had to slam on his brakes to avoid hitting Mr. Wright's

11

vehicle. Based even on just these facts, Officer Daves reasonably could have believed Mr. Wright was putting other people "in imminent danger of death or serious bodily injury" due to his conduct. Thus, Officer Daves' averment in his affidavit regarding the charge of reckless endangerment was not without support to establish probable cause.

Similarly, Officer Daves offered sufficient grounds in his affidavit upon which a magistrate judge could have concluded probable cause existed on the evading arrest charge. Officer Daves asserts he turned on his blue lights and siren to pull over Mr. Wright after Mr. Wright ran through the first light (Aff. of Complaint at 1). Even after seeing Officer Daves' lights, Mr. Wright refused to stop. Plaintiffs insist Mr. Wright was in no way "intentionally flee[ing] or attempting to allude" Officer Daves as required under the statute. However, Officer Daves had sufficient reason at the time to believe Mr. Wright had violated Tenn. Code Ann. § 39-16-603(b)(1). Moreover, because Officer Daves' belief was objectively reasonable although mistaken, it was still sufficient to establish probable cause.

Alternatively, Plaintiffs assert Officer Daves' affidavit contained "false facts and omitted material facts that had bearing on whether probable cause existed" (Court File No. 47 at 23). They also point to the fact that Officer Daves "maliciously and perjuriously swore out a warrant for Mr. Wright's arrest." Although Plaintiffs accuse Officer Daves of acting maliciously, his motive is irrelevant to the extent there has been a sufficient showing of probable cause upon which the magistrate judge issues a warrant. However, an officer can be held liable under § 1983 if he established probable cause and obtained the arrest warrant by "making material false statements either knowingly or in reckless disregard for the truth." *Vakilian v. Shaw*, 335 F.3d 509, 517 (6th Cir. 2003). The plaintiff seeking to overcome the officer's qualified immunity defense, however,

must demonstrate: "(1) a substantial showing that the defendant stated a deliberate falsehood or showed reckless disregard for the truth and (2) that the allegedly false or omitted information was material to the finding of probable cause." *Id.*

Plaintiffs have not demonstrated that Defendant made a "deliberate falsehood" or "showed reckless disregard for the truth" when he sought the arrest warrant. Plaintiffs insist Defendant's affidavit "merely alludes to a claimed medical emergency." Moreover, they claim Defendant failed to mention that Plaintiffs had a legally justifiable defense. An officer's affidavit, however, need only contain "adequate supporting facts about the underlying circumstances to show that probable cause exists for the issuance of the warrant." *Wheeler v. City of Lansing*, 660 F.3d 931, 938 (6th Cir. 2011). Officer Daves' affidavit clearly states that, as he approached Mr. Wright outside the hospital, Mr. Wright "yelled and said it was an emergency and that he was an EMT" (Aff. of Complaint at 1). Officer Daves then proceeds to describe the events at the hospital explaining that Mr. Wright took a female, presumably Mrs. Wright, into the emergency room. Plaintiffs have failed to demonstrate how this language evidences a "deliberate falsehood" or a "reckless disregard for the truth." Furthermore, Officer Daves had no reason to mention whether Plaintiffs had any legally justifiable defenses, such as necessity, in his affidavit. His job in drafting the affidavit was to state the facts and circumstances with regard to whether an offense was committed, not weigh potential legal justifications for why an individual may have committed an offense.

In sum, no reasonable factfinder would conclude, even viewing the facts in the light most favorable to Plaintiffs, that Defendant violated Plaintiffs' Fourth Amendment right to be free from unlawful seizure, arrest, and detention. Thus, Defendant is entitled to qualified immunity on these claims.

Plaintiffs also claim Defendant violated their Fourth Amendment rights by engaging in "physical abuse, coercion, and intimidation." Construed more broadly as an excessive force claim, such a claim will arise under the Fourth Amendment "[i]f the plaintiff was a free person at the time of the incident and the use of force occurred in the course of an arrest or other seizure of the plaintiff." *Phelps v. Coy*, 286 F.3d 295, 299 (6th Cir. 2002) (citing *Graham v. Connor*, 490 U.S. 386, 395 (1989)). When determining whether an officer engaged in excessive force, a court should apply "the objective-reasonableness standard, which depends on the facts and circumstances of each case viewed from the perspective of a reasonable officer on the scene and not with 20/20 hindsight." *Binay v. Bettendorf*, 601 F.3d 640, 647 (6th Cir. 2010) (quoting *Fox v. DeSoto*, 489 F.3d 227, 236 (6th Cir. 2007)). "This standard contains a built-in measure of deference to the officer's on-the-spot judgment about the level of force necessary in light of the circumstances of the particular case." *Burchett v. Kiefer*, 310 F.3d 937, 944 (6th Cir. 2002) (citing *Graham*, 490 U.S. at 395). In evaluating whether the officer's use of force was reasonable, a court should consider "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether he is actively resisting arrest or attempting to evade arrest or flight." *Id.* (citing *Darrah v. City of Oak Park*, 255 F.3d 301, 307 (6th Cir. 2001)).

Here, Plaintiffs do not allege any conduct was committed on the part of Defendant that would rise to a violation of the Fourth Amendment for use of excessive force. Officer Daves had no physical contact with Mrs. Wright. Defendant's only physical contact with Mr. Wright was when he grabbed his arm while Mr. Wright was assisting his wife out of the car. What Defendant knew at the time of the incident was that Mr. Wright had possibly committed two felonies, among other violations, in his presence. In particular, Mr. Wright ran through two red lights and failed to stop for

14

a police car that had signaled him to stop. In the midst of having to discern Mr. Wright's true motives upon arriving at the hospital, it was not completely unreasonable for Defendant to have grabbed Mr. Wright's arm as he reached into the passenger side of the car. In retrospect, it was probably an unnecessary act given the totality of the circumstances. However, this assessment by the Court is made in hindsight, a perspective Defendant could not avail himself of at the time of the incident. Finally, even if the Court was to conclude Defendant's conduct--either the grabbing of Mr. Wright's arm or his temporarily blocking the couple from entering the hospital--was unreasonable, nothing Plaintiffs have alleged would support a claim that such force would have been "excessive."

Hence, the Court concludes Defendant is entitled to qualified immunity on Plaintiffs' § 1983 claim.

### B.  Claims Against City of Chattanooga and Officer Daves in his Official Capacity

Plaintiffs' Complaint alleges Defendant City of Chattanooga and Officer Daves in his official capacity violated their constitutional rights under § 1983. Generally speaking, Plaintiffs assert the City of Chattanooga engaged in a policy or custom allowing and encouraging Officer Daves and other officers to violate citizens' civil rights by making arrests without probable cause and using improper force (Complaint at 10-14). They also allege the City of Chattanooga failed to adequately train, supervise, and discipline officers who made improper arrests or used improper force.

As a preliminary matter, Plaintiffs insist the Court should disregard the affidavits of Susan Blaine, Captain of Internal Affairs of the CPD; Lon Eilders, Manager of Accreditation and Standards of the CPD; and Mark Smeltzer, Training Coordinator for the CPD (Court File No. 47). Plaintiffs assert Defendants failed to properly disclose these witnesses during discovery. Rule 37(c)(1) of the Federal Rules of Civil Procedure provides that "[i]f a party fails to provide information or identify

15

a witness as required by Rule 26(a) or (e), the party is not allowed to used that information or witness to supply evidence on a motion . . . unless the failure was substantially justified or is harmless." This rule "mandates that a trial court punish a party for discovery violations in connection with Rule 26 unless the violation was harmless or is substantially justified." *R.C. Olmstead, Inc. v. CU Interface, LLC*, 606 F.3d 262, 271-72 (6th Cir. 2010) (quoting *Roberts v. Galen of Virginia, Inc.*, 325 F.3d 776, 782 (6th Cir. 2003)). The burden is on the "potentially sanctioned party" to demonstrate harmlessness. *Id.*

As support for their allegations, Plaintiffs first note Defendants did not mention these witnesses in response to Plaintiffs' "Notice to take Deposition of City of Chattanooga 30(b)(6) Representative Duces Tecum." Instead, Defendants only produced now-former Chief Mike Williams. Further, Plaintiffs claim Defendants disclosed Captain Susan Blaine as an expert witness after the expert disclosure deadline set in the parties' amended scheduling order. The deadline was September 16, 2011; Defendants did not submit this information until September 26, 2011. Due to Defendants' delay, Plaintiffs claim they had insufficient time to depose or serve interrogatories on Captain Blaine before the close of discovery. Finally, Plaintiffs aver Defendants never disclosed the names of Lon Eilders or Mark Smeltzer.

In response, Defendants claim they made clear to Plaintiffs that not one person would be able to speak to all the issues raised in Plaintiffs' notice (Court File No. 50-1 ("Aff. of Crystal Freiberg"), ¶ 4). Defendants also offer the deposition of former Chief Mike Williams to show Captain Susan Blaine was identified as a potential witness who could offer information on internal affairs issues (*id.* ¶ 5l; Court File No. 50-3 at 23, 37). Similarly, although Defendants admit they did not disclose Mark Smeltzer's name, they claim he was used as a substitute for Lieutenant Danna

16

Vaughn—another potential witness mentioned in Williams' deposition who could testify about training—because Lieutenant Vaughn was unavailable at the time the affidavits were being prepared (Court File No. 50). Defendants do not contest the fact that their expert disclosure list was submitted late.

In light of the evidence before the Court, the Court will not credit any testimony offered by Defendant with respect to Captain Blaine for purposes of the pending dispositive motions. Defendants submitted this information late to Plaintiffs, there was no substantial justification for their delay, and Plaintiffs were unable to fully conduct discovery with respect to this witness as a result. With respect to Lon Eilders and Mark Smeltzer, the Court recognizes there is some dispute over whether their names were properly disclosed; it appears they were not. However, the Court need not rule on this issue directly. The Court will refrain from relying on any expert testimony offered by these witnesses in light of the fact that neither appeared to offer any. With that said, to the extent any publicly available exhibits offered in support of Captain Blaine, Lon Eilders, or Mark Smeltzer's affidavits, such as CPD policies and procedures, are placed at issue by Plaintiffs, such documents may be used by the Court as sources that contain the full text of those policies and procedures.

Returning to Plaintiffs' § 1983 claims, Plaintiffs have failed to demonstrate a genuine issue of material fact exists with regard to whether a City of Chattanooga policy or custom authorizes officers to violate Plaintiffs' civil rights. First, Plaintiffs have not shown the City of Chattanooga lacks sufficient policies and procedures on the use of force and proper arrest procedures. The CPD has a policy known as ADM-5 that provides officers with guidance on the use of force (ADM-5 at 2-3). Also, the CPD has in place a policy known as OPS-42 to address proper arrest procedures; the

policy, among other things, clearly states officers must have probable cause to make a lawful arrest for a felony (OPS-42 at 2).

Plaintiffs, however, assert that even if no official policy is in place that authorized the violation of their civil rights, Defendants are liable under § 1983 because the City of Chattanooga has engaged in a "custom" or widespread practice of violating civil rights. In particular, Plaintiffs claim the City of Chattanooga has failed to adequately train, supervise, and discipline its officers and has, therefore, displayed "deliberate indifference" towards Plaintiffs' rights. Despite making this broad claim, Plaintiffs have in no way demonstrated that the City of Chattanooga's training, supervision, or discipline was actually inadequate, nor have they demonstrated "any inadequacy was the result of the [City of Chattanooga's] deliberate indifference." *See Ellis*, 455 F.3d at 700.

Plaintiffs point to Officer Daves' conduct both in the instant case as well as his past conduct to support their contention that Defendants have failed to adequately train, supervise, and discipline. Notably, Plaintiffs can identify no other officers with the CPD to illustrate Defendants' failure in these areas. Plaintiffs claim the City of Chattanooga tacitly approved Officer Daves' conduct by allowing him to violate its policies in the instant case. As previously noted, however, it is apparent Officer Daves acted pursuant to a valid arrest warrant. Plaintiffs allege other violations were committed though, including a violation of section VII of ADM-42, which requires that night and early morning arrests for felonies be made immediately even without a warrant (ADM-42 at 6). Also, they note Officer Daves was rude and used inappropriate language in violation of general policies of good police behavior. Even if Officer Daves violated these policies, such conduct alone fails to demonstrate a widespread decision on the part of the City of Chattanooga to allow its officers to violate citizens' civil rights. In fact, presumably, Officer Wright's decision with respect to section

VII of ADM-42 to not arrest Mr. Wright immediately was based on consideration of other CPD policies, such as the policy that states it is  preferable for officers to obtain a warrant first for less serious offenses, especially when "the offender does not pose a significant threat to the community and when he or she is not likely to flee." ADM-42 at 2.  Here, Mr. Wright was at the hospital with his wife and the circumstances likely satisfied these criteria.

Plaintiffs also point to evidence of investigations conducted with respect to Officer Daves to show a pattern on the part of the City of Chattanooga that allows officers to violate citizens' civil rights.  Again, however, Plaintiffs fail to demonstrate how these isolated incidents evidence a widespread pattern or show "deliberate indifference" on the part of the City of Chattanooga. Plaintiffs use two investigations sustained against Officer Daves to illustrate their theory. The first incident shows Officer Daves was investigated for improper use of force after spraying a crowd of juveniles with pepper spray and not filling out a use of force form afterwards (Court File No. 47-8). The second incident involved Officer Daves engaging in an improper pursuit by failing to initially turn on his emergency signals (Court File No. 47-9). Only the use of force incident is relevant to the facts of this case. However, besides failing to demonstrate a widespread practice of the violation of citizens' civil rights, these incidents reveal the City of Chattanooga is actively engaged in disciplining its officers. For the aforementioned incidents, Officer Daves received a five-day suspension and verbal counseling, respectively.

Plaintiffs also offer no evidence to show Officer Daves or other officers failed to receive the training offered by the CPD or supervision. Ultimately, they have failed to demonstrate "the existence of a widespread practice that . . . is so permanent and well settled as to constitute a custom or usage with the force of law." *See Monell*, 436 U.S. at 691.

Finally, Plaintiffs insist that omissions in the City of Chattanooga's training and policies also support their § 1983 claims. Based on the evidence before this Court, the CPD offers a comprehensive and time-intensive training curriculum for its officers on a number of topics, including use of force and proper arrest procedures (Court File No. 50-3 ("Aff. of Michael Williams"), at 47-65. According to then-Deputy Chief Michael Williams, the curriculum that was in place at the time of the incident involving Plaintiffs covered beyond what was required in most areas by the Tennessee POST, the governing body over Tennessee law enforcement officials (Aff. of Michael Williams at 47). Plaintiffs have focused on some of the topics that are absent from the curriculum, such as the lack of a policy on assessing and dealing with medical emergencies, training on identifying when necessity is a defense, and training on accommodating persons with disabilities. They rely on *Hobart v. City of Stafford*, 784 F. Supp. 2d 732 (S.D. Tex. 2011), for the proposition that the lack of training in a relevant area can support a § 1983 claim. They also rely on *Hobart* for the "single incident exception," which states a claim can be made out if the plaintiffs "allege facts that, if proven true, would support a finding that [their injury] was the 'highly predictable consequence of [the municipality's] fail[ure] to train its employees." *Id.* at 753.

Here, however, Plaintiffs have failed to show the alleged inadequacies were so severe that their result—the alleged injuries to Plaintiffs—would be "known or obvious" to the City of Chattanooga nor have they shown the result was the "inevitable consequence of those inadequacies." *See id.* Although the City of Chattanooga would ideally have a policy on every issue, none of the policies mentioned by Plaintiffs rise to the level necessary to invoke the "single incident exception" referenced by Plaintiffs. The possibility of Mr. Wright being arrested or Mrs. Wright receiving delayed medical care under the circumstances in this case are not so "known and obvious" that the

City of Chattanooga would have anticipated it to create a policy about "medical emergencies" or anticipate such a scenario involving an individual with a disability. Moreover, the injuries alleged by Plaintiffs would not inevitably result from the lack of such policies. Finally, to the extent Plaintiffs are asserting officers need to be trained on the legal justifications or defenses, such as necessity, they are misguided. As noted in the CPD policy manual itself, "in most cases, it is not the role of a police officer to decide whether an offense should be prosecuted; that is the responsibility of the court prosecutor" (OPS-42 at 7). Assessing whether a legal justification or defense applies, such as necessity, is not an essential component of an officer training curriculum.

Ultimately, with regard to training, the Court must consider whether "in light of the duties assigned to specific officers or employees the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *City of Canton v. Harris*, 489 U.S. 378, 389 (1989). Here, Plaintiffs' allegations of inadequate training fail to demonstrate any "deliberate indifference" on the part of the City of Chattanooga and, therefore, must be dismissed along with their other § 1983 claims. Accordingly, the Court will grant summary judgment on Plaintiffs' § 1983 claims against Defendants City of Chattanooga and Officer Daves in his official capacity.

## IV.    AMERICANS WITH DISABILITIES ACT

Plaintiffs' Complaint alleges violations of the Americans with Disabilities Act, "including but not limited to" Title II and Title III (Complaint at 14). Because Title I of the ADA deals with employment and Title III of the ADA involves public accommodations operated by private entities,

the Court will limit its analysis to Title II, which is the only subsection the Court can determine is particularly relevant to the facts of this case.[1] The Court also notes, as a preliminary matter, that the ADA claim brought against Officer Daves in his individual capacity must be dismissed given that "there is no individual liability under Title II of the ADA." *Sagan v. Sumner Cnty. Bd. of Educ.*, 726 F. Supp. 2d 868, 875 (M.D. Tenn. 2010) (citing *Carten v. Kent State Univ.*, 282 F.3d 391, 396-97 (6th Cir. 2002)).

Title II of the ADA provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. To establish a prima facie case under Title II of the ADA, a plaintiff must show: "(1) she has a disability; (2) she is otherwise qualified; and (3) she is being excluded from participation in, being denied the benefits of, or being subjected to discrimination under the program solely because of her disability." *Dillery v. City of Sandusky*, 398 F.3d 562, 567 (6th Cir. 2005) (citing *Jones v. City of Monroe*, 341 F.3d 474, 477 (6th Cir. 2003)). To recover compensatory damages, the plaintiff must also prove intentional discrimination. *Tucker v. Tennessee*, 443 F. Supp. 2d 971, 973 (W.D. Tenn. 2006). The discrimination must have been "*intentionally* directed toward him or her in particular." *Tucker v. Tennessee*, 539 F.3d 526, 532 (6th Cir. 2008).

Failure to supervise or train are not viable theories for recovery of compensatory damages in a Title II ADA claim since such failure is necessarily not directed at a particular disabled individual. *See Dillery*, 398 F.3d at 568 ("Acts and omissions which have a disparate impact on disabled persons in general are not specific acts of intentional discrimination against the plaintiff

---

[1] Plaintiffs fail to provide support for why any other provisions, including those of subsection IV of the ADA.

in particular.") (quotation omitted); *see also Scozzari v. City of Clare*, 723 F. Supp. 2d 945, 973 (E.D. Mich. 2010) (recounting how the court earlier "denied Plaintiff leave to amend the complaint to allege a claim based on the City's failure to train its officers under the ADA because pursuing such a claim would be futile").

Here, assuming Mrs. Wright had a disability and was otherwise qualified, the Court still concludes no reasonable factfinder would find Defendants violated Title II of the ADA based on the record. First, Plaintiffs have failed to demonstrate how Mrs. Wright was excluded from or personally denied the benefit of a service offered by the City of Chattanooga because of her disability. Mrs. Wright ultimately received medical treatment from Erlanger Hospital and was not deprived of treatment by the hospital. Therefore, the public entity at issue is not the hospital nor is the hospital a party to this case. To the extent Plaintiffs are alleging Officer Daves prevented Mrs. Wright from receiving treatment, an officer may be subject to an ADA claim if he arrests an individual and denies her medical care because she is disabled. *See Thompson v. Williamson Cnty.*, 219 F.3d 555, 558 (6th Cir. 2000). However, at no point was Mrs. Wright ever under arrest or subject to being arrested. To the extent Plaintiffs are alleging the City of Chattanooga had an obligation to provide a service that would accommodate Mrs. Wright in receiving medical care in light of her medical emergency, Plaintiffs' claim still fails. As noted by Defendants, no facts in this case indicate Plaintiffs contacted the City of Chattanooga or requested any accommodations to drive through red lights without stopping to reach the hospital. Moreover, had Plaintiffs desired such assistance, presumably Mr. Wright might have quickly explained the circumstances to Officer Daves to seek his assistance when he saw Daves' lights flashing behind him on the way to the hospital.

Even if Defendants have in some way violated the third prong, Plaintiffs have offered no evidence of intentional discrimination, which is essential to support a claim under Title II of the ADA. Even viewing the facts in the light most favorable to Plaintiffs, Plaintiffs have not shown Officer Daves prevented Mrs. Wright from receiving medical care "because" of her disability. If anything, Officer Daves engaged in such conduct because Mr. Wright had possibly committed two felonies in his presence and Mr. Wright had failed to acknowledge his earlier conduct.

Finally, any "failure to train or supervise" claims cannot survive summary judgment. Claims under Title II of the ADA must be brought against a specific individual. *See Dillery*, 398 F.3d at 568. Plaintiffs' allegations regarding the absence of a policy or inadequate training would inevitably be directed at the general populace and would fail to address the primary issue--that is, whether Defendants intentionally discriminated against Mrs. Wright in particular.

Accordingly, the Court will grant summary judgment on Plaintiffs' ADA claims against all Defendants.


## V.    STATE LAW CLAIMS

Plaintiffs assert several different state law claims against Defendants. The Court finds dismissal without prejudice is proper for these claims. As state law claims brought in a federal-question case, the claims can only be heard by the Court through the exercise of supplemental jurisdiction, pursuant to 28 U.S.C. § 1367. The exercise of federal supplemental jurisdiction is discretionary. District courts may decline to exercise supplemental jurisdiction over a state law claim if:

(1) the claim raises a novel or complex issue of State law,

24

(2) the claim substantially predominates over the claim or claims over which the district court has original jurisdiction,
(3) the district court has dismissed all claims over which it has original jurisdiction, or
(4) in exceptional circumstances, there are other compelling reasons for declining jurisdiction.

28 U.S.C. § 1367(c).

Here, the Court has dismissed all claims over which it has original jurisdiction, thus the third rationale of § 1367(c) applies. The Sixth Circuit "has expressed a strong policy in favor of dismissing" state law claims when all federal claims over which the district court had original jurisdiction have been dismissed. *Staggs v. Ausdenmoore*, No. 92-3172, 1993 WL 131942, *5 (6th Cir. Apr. 27, 1993). Accordingly, the Court will dismiss without prejudice all state law claims against Defendants.


**VI.     CONCLUSION**

For the reasons stated above, the Court will **GRANT IN PART** the motions for summary judgment filed by Defendants City of Chattanooga and Officer James Daves in his official capacity (Court File No. 24) and Officer Daves in his individual capacity (Court File No. 28).  The Court will **GRANT** summary judgment for all Defendants on Plaintiffs' § 1983 and ADA claims. The Court will **DISMISS WITHOUT PREJUDICE** all state law claims against Defendants.

<u>*/s/*</u>_____
**CURTIS L. COLLIER**
**CHIEF UNITED STATES DISTRICT JUDGE**